```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 WESTERN DISTRICT OF MISSOURI
                       WESTERN DIVISION

JENNY E. ANDERSON,              )
                                )
          Plaintiff,            )
                                )
    v.                          )  Case No.
                                )  12-0992-CV-W-REL-SSA
CAROLYN COLVIN, Acting          )
Commissioner of Social Security,)
                                )
          Defendant.            )
```

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jenny Anderson seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title II of the Social Security Act ("the Act"). Plaintiff argues that the ALJ erred in (1) failing to identify the weight given to the medical opinion evidence of record, (2) in failing to consider all of the evidence including third party observations and information, (3) failing to consider all of the medical evidence, (4) failing to properly consider plaintiff's obesity, (5) failing to link the RFC determination to substantial evidence of record, and (6) failing to apply the Medical-Vocational Guidelines properly. I find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff's is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

## I. BACKGROUND

On May 21, 2009, plaintiff applied for disability benefits alleging that she had been disabled since September 11, 2007. Plaintiff's disability stems from post concussion head syndrome, fibromyalgia, headaches, anxiety and dizziness. Plaintiff's application was denied on August 21, 2009. On August 18, 2010, a hearing was held before an Administrative Law Judge. On October 14, 2010, the ALJ found that plaintiff was not under a "disability" as defined in the Act. On June 5, 2012, after considering additional evidence, the Appeals Council denied plaintiff's request for review. Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II. STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the

entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

### *III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS*

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not

less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

>     Yes = not disabled.
>     No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

>     No = not disabled.
>     Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

>     Yes = disabled.
>     No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

        No = not disabled.
        Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

        Yes = disabled.
        No = not disabled.

## *IV.* *THE RECORD*

Plaintiff summarized the voluminous record in her brief. I have carefully studied plaintiff's summarization as well as the actual medical records, administrative records, and transcript of the administrative hearing, I will not repeat all of that in this order. Defendant agreed with plaintiff's recitation of the evidence for the period between plaintiff's alleged onset date and the date of the ALJ's decision.

Plaintiff argues that the defendant's statement that the evidence submitted to the Appeals Council is not relevant is in error. If the Appeals Council grants review, its decision (absent a remand to the ALJ) becomes the Commissioner's final agency action that is subject to judicial review. Here, on the other hand, the Appeals Council considered the new evidence submitted by plaintiff and then denied review. The district court's statutory jurisdiction is confined to review of the final decision of the Commission. 42 U.S.C. § 405(g). Therefore, I

5

may only review the ALJ's final decision, not the Appeals Council's non-final administrative decision to deny review. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). Where, as here, the Appeals Council considers new evidence but denies review, the court must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence. McDade v. Astrue, 720 F.3d 994, 1000 (8th Cir. 2013); Wright v. Astrue, 489 Fed. Appx. 147 (8th Cir.2012), citing Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007).

> The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. See Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. See 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. See Nelson, 966 F.2d at 366.

Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000).

## *V.  FINDINGS OF THE ALJ*

Administrative Law Judge George Bock entered his opinion on October 14, 2010 (Tr. at 10-17). Plaintiff's last insured date

is December 31, 2013 (Tr. at 12).

Step one.  Plaintiff has not engaged in substantial gainful activity since her alleged onset date (Tr. at 12).  Plaintiff worked after her alleged onset date, but her earnings in 2008 ($6,875.64) did not amount to substantial gainful activity (Tr. at 12).

Step two.  Plaintiff's severe impairments consist of weight disproportionate to height, mild positional vertigo, status post closed head injury with some residual mild to moderate memory impairment, and fibromyalgia with positive control points (Tr. at 12).  Plaintiff's history of concussion, essential hypertension, and mild depression are not severe impairments (Tr. at 12).

Step three.  Plaintiff's impairments do not meet or equal a listed impairment (Tr. at 12-13).

Step four.  Plaintiff retains the residual functional capacity to perform light work except she cannot work at unprotected heights or around hazards and she requires repetitive 1- to 3-step instructions with no detailed instructions and no public contact (Tr. at 13-16).  Plaintiff is unable to perform her past relevant work as a freight broker or properly manager because those are skilled jobs (Tr. at 16).

Step five.  Plaintiff is capable of working as a marker, a housekeeper, or a clerk, all of which are available in significant numbers (Tr. at 16-17).

## VI. ANALYSIS

Plaintiff argues that the ALJ erred in failing to identify the weight given to the opinion of Dr. Edd Bucklew, Dr. Cedric Fortune, and Dr. Joseph Allan; in failing to consider the third-party observations of plaintiff's husband and friend; in failing to explain how he reached his conclusion regarding plaintiff's mental residual functional capacity; in failing to assign limitations based on plaintiff's obesity; in failing to link his RFC determination to the specific evidence upon which he relied; in failing to order a consultative exam; and in failing to include non-severe impairments in the RFC.

J. Edd Bucklew, Ph.D., did not examine or treat plaintiff but provided a Psychiatric Review Technique finding that plaintiff had only mild limitations (Tr. at 277-287).  He based his opinion on the fact that plaintiff's exam in August 2009 reveals that she was able to drive, handle a checkbook, do her activities of daily living, remember and understand instructions, interact socially and adapt to her environment.  She was tested with neuropsycological batteries twice since her alleged onset date and those resulted in findings of average intelligence, some

variability across memory domains, mildly limited attention, and findings "generally not consistent with deterioration that would be expected to occur secondary to HI [head injury]."

Cedric Fortune, M.D., examined plaintiff on August 8, 2009, and noted that she had consumed alcohol and then slipped in a bathtub at a resort (Tr. at 267-274). She alleged a brief loss of consciousness and said she went to the hospital two days later where she had an MRI and CAT scan, both of which were normal. "She is able to do her ADL's [activities of daily living] with no problem." Plaintiff was able to drive. She gave an example of her memory loss -- she was unable to remember what she had for dinner the night before. However, Dr. Fortune observed that plaintiff's husband was also unable to remember what he had for dinner the night before. Plaintiff expressed anger about the slip and fall incident "which does involve some litigation." Plaintiff's associated headaches occur three times a day and last 2 to 15 minutes. Plaintiff does not take any medication for them, she just lets them "work out." Though plaintiff complained of dizziness when she closes her eyes, she is able to drive a car and uses no assistive device. Plaintiff continued to smoke and consume alcohol.

Dr. Fortune performed tests and noted that although plaintiff "did tend to fall to the right with a Romberg test and

also tended to fall to the back, . . . the results were somewhat inconsistent. . . . Speech initially was sometimes hesitant at times, but when she was distracted it was sustained and understandable and hearing was normal." Plaintiff's gait was normal and comfortable. Stance was normal. She had no trouble squatting or getting up from a sitting position. Fine motor ability was normal.

Plaintiff complained of pain in the trigger points, but "she also complained of pain in the control areas of the forehead, both deltoids and both anterior quad muscle groups, which cause the trigger points to be not significant."

Dr. Fortune stated that plaintiff could understand and remember reasonable instructions, have reasonable sustained concentration and persistence in tasks, would be able to interact socially and adapt to her environment "despite the comment of her avoiding social contacts."

Plaintiff's treating physician, Dr. Allan, consistently refused to provide opinions with regard to plaintiff's condition as far as her lawsuit was concerned and her disability case until a few days before her administrative hearing. On July 21, 2010, Dr. Allan wrote a letter to plaintiff's disability lawyer. Dr. Allan discussed plaintiff's fall and resulting condition in terms of what he had been told: "I do believe she was hospitalized . .

. with a concussion and postconcussive syndrome . . . problems with expressing herself and speech, perhaps some dysarthria, dizziness, nausea, disbalance, severe headaches and even some tenderness temporal area." He noted that after he began following plaintiff for this condition, her mental status exam showed "no thought disorder." He mentioned only that she seemed "somewhat depressed." He specifically noted that he had not received or reviewed any of the records from plaintiff's neurologist.

He stated that "the patient was noting" that she had continued problems with concentration, vertigo, decreased memory, and additional symptoms including trouble with simple math, inability to make change, difficulty staying on track with an activity. Dr. Allan noted that plaintiff had depressive episodes surrounding some family issues in 2003 for which she was started on an antidepressant. "This condition has improved on this treatment. . . . [and] the patient's mood did continue to be considered quite satisfactory."

The only observations or treatment in this letter relate to plaintiff's situational depression which was improved and quite satisfactory. Everything else is based on plaintiff's subjective statements, and Dr. Allan made this very clear. His statement in conclusion that "it would appear that the patient would be unable

11

to work on a full-time basis" is very obviously based on plaintiff's statements and not on Dr. Allan's treatment of her. His letter was expressly so limited, and on its face it does not even purport to be supported by his own treatment of her but by her statements that, if true, would result in the conclusion that she is unable to work.

Plaintiff takes issue with the ALJ's statement that "no physician or psychologist of record has provided an opinion that the claimant is disabled on the basis of any impairment or any combination of impairments." Yet this is true. Dr. Allan's conclusion is not based on any impairments, it is based on plaintiff's subjective statements regarding her limitations which Dr. Allan made clear in his letter. His statement that plaintiff is unable to work is an opinion reserved to the Commissioner, Dr. Allan did not set forth any functional limitations, and he clearly stated that he was repeating plaintiff's reports of what occurred in the hospital and with her neurologist. He did not pretend to have observed or assessed any of the limitations discussed with the exception of mild and improved depression.

Although plaintiff complains that the ALJ did not impose any physical limitations as a result of plaintiff's obesity, plaintiff herself does not even suggest what limitations she experiences due to her weight. She merely suggests that the case

12

be remanded to the ALJ so that he can find some limitations.

Plaintiff argues that the ALJ should have considered her non-severe impairments of headaches, chronic fatigue, asthma, COPD, SVT, and atrial fibrillation. However, the record shows that in January of 2010 plaintiff's neurologist prescribed Topamax for plaintiff's headaches which were noted two months later to be 80% improved. Her neurologist performed a mental status exam and found that it was within normal limits, as were plaintiff's gait and station. Plaintiff's asthma and COPD are, according to the medical records, caused and exacerbated by plaintiff's continued smoking against medical advice. Plaintiff's SVT and atrial fibrillation do not impact her functional capabilities.

Plaintiff merely recites the evidence supporting these conditions and jumps to the conclusion that "had the ALJ precluded bending, stooping, and crouching, the VE testified that none of the jobs identified would be available to Plaintiff." However, plaintiff has failed to indicate how any of these conditions affect her ability to bend, stoop or crouch; and had these non-severe impairments impacted those abilities in a more-than-minimal way, the ALJ would not have found that they were non-severe impairments. Notably plaintiff does not argue that the ALJ erred at step two in finding that these are not severe

impairments.

I have considered plaintiff's other arguments in light of the entire record, and I find them to be without merit.

## *VIII. CONCLUSIONS*

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff is not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
September 30, 2013